[No. 32911. Department Two. September 21, 1954.]

ANNA BLASICK et al., Respondents, v. THE CITY OF YAKIMA, Appellant.[1]

[1] Reported in 274 P. (2d) 122.

*Elwood Hutcheson* and *Lauren W. Dobbs*, for appellant.
*George C. Twohy* and *Roberta Kaiser,* for respondents.

HILL, J.—This is a personal injury action involving a fall by Anna Blasick on an alley crosswalk in the city of Yakima. From a judgment on the verdict favorable to Mrs. Blasick the city appeals, urging twenty-six assignments of error.

This appeal poses the usual questions of whether the city was negligent in its maintenance of the crosswalk and whether the pedestrian was guilty of contributory negligence. The most unusual question presented is the propriety of the instruction under which the plaintiff was entitled to recover if she had proved that the city's negligence "proximately caused or *materially contributed to* the accident."

Appellant's description of the area where, according to her testimony, Mrs. Blasick caught her heel and fell is as follows:

"There was a slight depression in the cross-walk of the alley . . . by reason of heavy truck traffic thereon and winter frost conditions, resulting in a spauled area where the surface of the cement had scaled off. . . .

"It is undisputed that for the most part the depression in

this spauled area was less than one-half inch below the level of the surrounding area, and that in only two places the depth was three-fourths inch, and this was the maximum depth of the depression in any part of said cross-walk."

("Spauled" is apparently a variant of "spalled," and in this instance means that the smooth surface of the concrete was gone, leaving an irregular depression of various depths and exposing the rocks and stones comprising the aggregate.)

While our examination of the record does not leave us with the certainty expressed by the appellant that the maximum depth of the depression was three-fourths inch, we accept that figure for the purposes of the opinion. To complete the picture, it should be added that there was no alley curb and the alley crosswalk was flush with the sidewalk on either side of the alley (except near the street curb line, and we are not concerned with that portion of the crosswalk). The depressions of three-fourths inch depth were twelve inches by three inches and eight inches by 2¾ inches, respectively, and were part of a much larger spauled area where the depression was from one-fourth to one-half inch deep. The spauled area extended across the alley way and had to be walked on by pedestrian traffic.

We said, in *Fritsche v. Seattle* (1941), 10 Wn. (2d) 357, 360, 116 P. (2d) 562:

"A test, which is sometimes applied to determine whether a city has performed its duty, is whether a reasonably cautious man, having the duty to preserve and repair the sidewalks, would or would not consider a particular defect as one where pedestrians might be injured."

See, also, *Lewis v. Spokane* (1923), 124 Wash. 684, 215 Pac. 36; *Kennedy v. Everett* (1940), 2 Wn. (2d) 650, 99 P. (2d) 614.

This quotation was the basis of an instruction in this case to which no exception was taken.

There might well be cases in which the defects in sidewalks or crosswalks are so inconsequential that reasonable minds could not conclude that failure to repair them would

constitute lack of reasonable care. We held that such was the situation in *Grass v. Seattle* (1918), 100 Wash. 542, 171 Pac. 533. Appellant urges that the *Grass* case "is directly in point and conclusive," and points out that the depth of the break in the sidewalk involved therein was 1⅛ inches.

We think the *Grass* case neither directly in point nor conclusive. There was no depression or hole in the sidewalk, but a straight break across a cement sidewalk, with an elevation of 1⅛ inches at the inner line of the walk and tapering to nothing at the outer edge. (The opinion does not give the width of the sidewalk, but it appears in the record as eight feet.) The plaintiff-pedestrian had passed over the break in the walk on an average of twice a week for several weeks preceding the accident and did not even know that the defect in the sidewalk existed, which was a factor in the court's conclusion that the defect must have been inconsequential. We are here concerned, based on the city's own exhibit and testimony, with a spauled area constituting a depression or hole in which a heel might be caught, the spauled area being in an alley crosswalk and ranging in depth from one-fourth inch to three-fourths inch and located on one of the busiest streets in the city so far as pedestrian traffic is concerned.

We have distinguished the *Grass* case (in which, incidentally, this court did not have the benefit of a brief from the plaintiff-respondent) some six times since 1930, on various phases and circumstances, but we did not give the *coup de grace* to the idea that negligence in sidewalk cases is a matter of micrometer readings until *Johnson v. Ilwaco* (1951), 38 Wn. (2d) 408, 229 P. (2d) 878, where, speaking of the *Grass* case, we said (p. 412):

"We cannot believe from a reading of the opinion that this court intended to adopt a fixed rule that a city could never be held liable if offsets in sidewalks did not exceed 1⅛ inches";

and that:

"The *Grass* case must be regarded to a great extent as in a class by itself, and we do not feel that its doctrine should

be extended beyond the actual situation then before the court."

We there indicated that a reasonably cautious man, in applying the test above referred to, would consider factors other than the height of an offset or the depth of a depression or hole. We said (p. 413):

"The exact extent of the offset is not the only factor to be considered. The nature and character of the sidewalk, its location, the amount of travel over it by pedestrians, the extent to which the presence of the offset would ordinarily be seen or observed by travelers on the sidewalk, and many other conditions which might exist, all have to be taken into consideration. In those cases where reasonable minds can differ, the questions whether an offset in a sidewalk is of such a character that danger to a pedestrian from its existence may reasonably be foreseen and anticipated by the city, and whether in suffering it to remain the city had kept and maintained such sidewalk in a reasonably safe condition for ordinary use by pedestrians, are for the jury to determine."

We are satisfied that the evidence in the present case on the various factors to be considered justified the trial court in submitting the case to the jury, and that it did not err in so doing.

Appellant strenuously urges that the injured pedestrian "was not looking where she was walking," and that the "depression was plainly visible, open, obvious and apparent."

Applicable to this case are our holdings that: (a) A pedestrian on a sidewalk who has no knowledge to the contrary may proceed on the assumption that the city has performed its full duty and has kept the sidewalk in a reasonably safe condition (*Kennedy v. Everett, supra; Clevenger v. Seattle* (1947), 29 Wn. (2d) 167, 186 P. (2d) 87); (b) a pedestrian is not required to keep his eyes on the walk immediately in front of him at all times (*James v. Burchett* (1942), 15 Wn. (2d) 119, 129 P. (2d) 790; *Clevenger v. Seattle, supra*); (c) the fact that there is something in a pedestrian's path which he could see if he looked and which he does not see

because he does not look, does not constitute contributory negligence as a matter of law unless there is a duty to look for that particular thing (*Hines v. Neuner* (1953), 42 Wn. (2d) 116, 253 P. (2d) 945).

These holdings, applied to the facts in this case, make it clear that whether a reasonably prudent and cautious pedestrian would have looked for a spauled area in the alley crosswalk was a question of fact for the jury, and that the pedestrian was not contributorily negligent as a matter of law. The case of *Hines v. Neuner, supra,* disposes of all the contentions made by the appellant on this phase of the case.

The trial court instructed that the plaintiffs (respondents), to recover, must prove one or more acts of negligence charged in the complaint "and that such negligence proximately caused or *materially contributed to* the accident." Whether or not it was error to so instruct in the instant case we need not determine, because if it was error it was not prejudicial. We have here no question of intervening cause, unforeseeable consequences, or other complications. Any negligence of the city in this case which materially contributed to the injury must have been a proximate cause thereof.

It is because there are so many situations where negligence which materially contributes to an injury might not be a proximate cause thereof (as was clearly pointed out in *Eckerson v. Ford's Prairie School Dist.* (1940), 3 Wn. (2d) 475, 482, 101 P. (2d) 345) that we are critical of this instruction. The "materially contributed" test is synonymous with the "substantial factor" test proposed by Restatement, Torts, 1159, § 431. We are desirous of avoiding the confusion to which the supreme court of Minnesota refers in *Seward v. Minneapolis St. R. Co.* (1946), 222 Minn. 454, 25 N. W. (2d) 221, in consequence of its prior approval of the "material element or substantial factor" test as a definition of "proximate cause." Of the "substantial factor" test, Prosser on Torts 318, § 45, says:

"A few courts have followed the Restatement of Torts in adopting a test proposed by the late Jeremiah Smith, that

'the defendant's tort must have been a substantial factor in producing the damage complained of.' As applied to the fact of causation alone, the test is of considerable assistance, and perhaps no better guide can be found. But when the 'substantial factor' is made to include all of the ill-defined considerations of policy which go to limit liability even when causation in fact is found, it has no more definite meaning than 'proximate cause,' and it becomes a hindrance rather than a help. It is particularly unfortunate in so far as it suggests that the questions involved are only questions of causation, and obscures all other issues, and it tends to leave to the jury matters which should be decided by the court."

See, also, Prosser's article in 21 Minn. L. Rev. 19 (1936), and the article by Leon Green, then dean of the Northwestern University Law School, in 29 Ill. L. Rev. 582 (1935).

■ We have labored this matter somewhat lest, because we do not brand the instruction in question as error, it might be concluded that we approve it. We hope we have made it clear that we are not disposed to substitute the "materially contributed" or "substantial factor" test either as a definition of or a substitute for "proximate cause" (as defined in our cases) in determining what is actionable negligence.

■ The verdict for $4,260.90, of which about nine hundred dollars is for special damages for medical and hospital expenses and household help, while perhaps liberal, is not excessive where complications made necessary the resetting of a comminuted Colles fracture of the right wrist and the wrist and arm had to be in a cast for ten weeks, and where there was evidence of great pain, sleepless nights, nervousness, and lost weight, and some limitation of use of the arm at the time of the trial a year and three months after the injury.

With reference to the rulings on evidence of which appellant complains, the record shows that ultimately the appellant got everything before the jury that it was entitled to have admitted.

Ten assignments of error deal with requested instructions not given. One was for a directed verdict and is disposed

of by our prior discussion of negligence and contributory negligence. The other nine fall into two categories, those which were proper but not necessary and those which, so far as they were correct statements of the law, were covered by the instructions given. We find no prejudicial error in the trial court's refusal to give requested instructions.

Five assignments of error deal with instructions given by the trial court. With one of these we have already dealt at some length. As to the other four, the first recites the claims of the parties as shown by the pleadings, and the court made that fact quite clear. If the allegations with reference to a slippery or deceptive situation were not supported by the evidence, the jury saw the *locus in quo* and was not misled. The instruction on damages made clear that the plaintiff could recover only the amounts reasonably expended and the debts reasonably incurred for medical and hospital expense, and the reference in the pleadings carried over into the instruction relative to three hundred dollars for further medical expenses and treatment could not have misled the jury or been prejudicial to the appellant. The three other instructions complained of were correct statements of the law as applied to the facts of this case. We find no prejudicial error in the instructions given by the trial court, nor do we find any warrant for appellant's charge that the instructions as a whole were favorable to the respondents and prejudicial to the appellant.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

November 8, 1954. Petition for rehearing denied.