[No. 1873–3.   Division Three.   June 29, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD COX, *Appellant.*

*Vovos & Voermans* and *Mark Vovos,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Fred Caruso, Deputy,* for respondent.

MUNSON, C.J.—Defendant was found guilty of one count of grand larceny (RCW 9.54.010(2)) and one count of unlawful sale of securities (RCW 21.20.010).[1] He now challenges: the sufficiency of the evidence on each count, several of the court's instructions, and the failure to give several proposed instructions. We affirm.

█ A challenge to the sufficiency of the evidence admits the truth of the evidence of the party against whom the challenge is made and all inferences reasonably drawn therefrom and further requires that the evidence be interpreted most strongly against the challenger and in a light most favorable to the opposing party. *State v. Murray,* 10 Wn. App. 23, 516 P.2d 517 (1973); *State v. Sanders,* 7 Wn. App. 891, 503 P.2d 467 (1972). Considered in this light, the jury was entitled to find:

---

[1] "It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

"(1) To employ any device, scheme, or artifice to defraud;

"(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

"(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

1. That the defendant, in the company of Robert Schultz, visited the victim on October 12, 1973, and advised her (a) that there was a corporation formed to develop land adjacent to Lake Roosevelt; (b) that Mr. Cox had already invested $20,000 and contemplated building a home on one of the units; (c) that the plat had been filed; and (d) that another party had already invested in the corporation and a third party contemplated investing.

2. That in reliance upon these allegations, the victim gave to the defendant and Mr. Schultz a post–dated check for $20,000. When the date on the check neared and she had been unable to sell other stock in order to cover the check, the victim asked that they withhold depositing it until the sale could be completed. Ultimately, she took out a loan to cover the check and subsequently sold other stock to pay back the loan.

3. That the check cleared on November 15, 1973.

4. That 3 days before the check cleared, Mr. Schultz used the check to open a bank account in the name of Columbia River Land and Development Company, a trade name rather than a corporate name, and on the same day he wrote a $5,000 check to defendant.

5. That on January 15, 1974, articles of incorporation of Columbia River Land and Development, Inc., were filed by the Secretary of State listing the victim as a director.

6. That on February 1, 1974, Mr. Schultz ordered 100 stock certificates from a printer in Spokane and ultimately delivered to the victim certificate No. 104 which showed her holdings to be 8,000 shares.

7. That defendant and Schultz represented to the victim that even though the sale of property might not reach their expectations, the value was such that they could always sell the land and get their money back, but that they antici-pated increasing the value from $20,000 to $80,000 within a given period of time.

Although many of these statements were contested by the defendant, the veracity of the witnesses and the weight of such statements were matters to be considered by

the jury. *Arthurs v. National Postal Transport Ass'n,* 49 Wn.2d 570, 304 P.2d 685 (1956). We find there was sufficient evidence upon which to base convictions on both counts, particularly since the defendant did not have a valid license to sell securities within this state at the time these transactions took place.

The defendant contends that the failure of the court to insert the words "specific intent" within the statutory definition of grand larceny (instruction No. 3)[2] and in the instruction relating to unlawful sales of security (instruction No. 5)[3] is reversible error. We disagree.

---

[2] "INSTRUCTION No. 3

"Before you can find the defendant guilty of the crime of GRAND LARCENY, as charged in Count I of the Information, you must find from the evidence beyond a reasonable doubt all of the following elements:

"1. That the said ROBERT SHULTZ, in the County of Spokane, State of Washington, on or about between October 12, 1973, and April 18, 1974, then and there being, did then and there wilfully and unlawfully, with intent to deprive and defraud the owner thereof, obtain from ANNABELLE G. HEIDECKER a sum of money in excess of $75.00 in lawful money of the United States, the property of and belonging to the said ANNABELLE G. HEIDECKER;

"2. That the said ROBERT SHULTZ obtained such money by color and aid of false and fraudulent representation and pretenses;

"3. That such representations were false, the said ROBERT SHULTZ and defendant, DONALD COX, knowing the same to be false;

"4. That said ANNABELLE G. HEIDECKER believed said representation, relied thereon, and was deceived;

"5. That the said defendant, DONALD COX, in the County of Spokane, State of Washington, on or about between October 12, 1973 and April 19, 1974, then and there being, did then and there wilfully and unlawfully aid, abet, counsel and encourage ROBERT SHULTZ in the commission of the crime of GRAND LARCENY as aforesaid.

"If you find that any of the foregoing elements have not been established by the evidence in this case beyond a reasonable doubt, you must acquit the defendant of the crime of GRAND LARCENY, but if you find all of these elements have been established by the evidence in this case beyond a reasonable doubt, you must find the defendant guilty of GRAND LARCENY."

[3] "INSTRUCTION No. 5

"Before you can find the defendant guilty of the crime of UNLAWFUL SALE OF SECURITIES, as charged in Count II of the Information, you must find from the evidence beyond a reasonable doubt all of the following elements:

"1. That the said ROBERT SHULTZ, in the County of Spokane, State of Washington, on or about between October 12, 1973 and April 19, 1974, then and there being, did then and there wilfully and unlawfully, either

Instructions of the court are to be read as a whole. *Webley v. Adams Tractor Co.,* 1 Wn. App. 948, 465 P.2d 429 (1970). Defendant's objections to instructions Nos. 3 and 5, because they lacked the term "specific intent" and because they failed to state that said intent must exist at the time the money was obtained, are not well taken. "Willfully" (instruction No. 8) and "specific intent" (instruction No. 15) were properly defined. Related instructions stated that intent is a mental state which may be inferred from the circumstances and that a person intends the natural and probable consequences of his acts. Taking the instructions as a whole, we find the jury was adequately instructed. *Nelson v. Mueller,* 85 Wn.2d 234, 533 P.2d 383 (1975).

The defendant contends that the court's instruction No. 5 is inadequate on the basis that it fails to require the necessary intent to defraud and deprive. The first portion of this instruction specifies the activities which constitute

---

"(a) Employ any device, scheme or artifice to defraud, or

"(b) Make any untrue statement of material fact or omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which it was made, not misleading, or

"(c) Engage in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person;

"2. That said act or acts were done in connection with the offer or the sale of securities to ANNABELLE G. HEIDECKER;

"3. That the said defendant, DONALD COX, in the County of Spokane, State of Washington, on or about between October 12, 1973 and April 19, 1974, then and there being, did then and there wilfully and unlawfully aid, abet, counsel and encourage ROBERT SHULTZ in the commission of the crime of UNLAWFUL SALE OF SECURITIES as aforesaid.

"If the State has failed to establish by the evidence in this case, beyond a reasonable doubt, any one of the foregoing elements, then you must acquit the defendant, DONALD COX, of the crime of UNLAWFUL SALE OF SECURITIES, as charged in Count II of the Information.

"With respect to elements 1(a), 1(b), and 1(c), these are alternatives, and it is only necessary for the State to prove either 1(a), 1(b), or 1(c); however, it is necessary that all of you agree either to 1(a), 1(b), or 1(c) in order to return a verdict of guilty.

"On the other hand, if the State has established by the evidence beyond a reasonable doubt all of the foregoing elements, it will be your duty to find the defendant, DONALD COX, guilty of the crime of UNLAWFUL SALE OF SECURITIES."

unlawful sale of securities and is based upon statutory language. Subsections (1) and (3) specifically require an intent to defraud or deceive, whereas subsection (2) does not. The defendant's proposed instruction would add an intent to defraud or deprive as an element under subsection (2). We conclude that an intent to defraud is unnecessary in a violation of subsection (2), *i.e.*, making or failing to make a misleading statement of a material fact. The defendant relies upon *State v. Hynds,* 84 Wn.2d 657, 663, 529 P.2d 829 (1974), and cases cited therein as requiring that a "specific intent to defraud must be proven." The federal cases cited in *Hynds* all involve mail fraud; the federal mail fraud statute specifically requires an intent to defraud; thus, they are distinguishable.

Although an action described under RCW 21.20.010 constitutes an unlawful sale of securities, criminal liability does not attach to such action unless that person willfully performed the act. *State v. Hynds, supra; Shermer v. Baker,* 2 Wn. App. 845, 472 P.2d 589 (1970); RCW 21.20-.400. In determining whether instruction No. 5 sufficiently defined the intent necessary for criminal sale of securities, this court must consider the necessary intent under both RCW 21.20.010 and .400. Our present law provides little guidance in determining the specific intent necessary under these two statutes. RCW 21.20.010 is essentially the same as Rule 10b–5 of the Federal Securities and Exchange Act.[4] *Shermer v. Baker, supra.* Furthermore, the first portion of RCW 21.20.400 is essentially the same as the first portion

---

[4] 17 C.F.R. § 240.10b–5, at 392 (1976) states:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

of the federal statute.[5] Therefore, it is proper for this court to consider the federal court's interpretation of these federal statutes in determining the intentions necessary for a criminal violation of this state statute. *Accord, State v. Hynds, supra; Shermer v. Baker, supra.*

■ In considering Rule 10b–5 (similar to RCW 21.20-.010), the federal cases reflect that a specific intent to defraud is unnecessary; but it is necessary that there be more than a showing of mere negligence. *See Republic Technology Fund, Inc. v. Lionel Corp.*, 483 F.2d 540 (2d Cir. 1973); *Chris–Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 363 (2d Cir. 1973); *Securities & Exch. Comm'n v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2d Cir. 1971); *Securities & Exch. Comm'n v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968); Annot., 3 A.L.R. Fed. 819 (1970). Furthermore, those cases dealing with the federal statutory equivalent to RCW 21.20.010(2) specifically state that an intent to defraud or deprive is not necessary to constitute a violation of the misleading statement section. *Securities & Exch. Comm'n v. Texas Gulf Sulphur Co., supra;* Annot., 3 A.L.R. Fed. 819, 824–26 (1970); *accord, United States v. Dixon*, 536 F.2d 1388 (2d Cir. 1976) (failure to include a statement of indebtedness in a proxy statement); *Securities & Exch. Comm'n v. Manor Nursing Centers, Inc., supra* (the prospectus was misleading); *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123 (7th Cir. 1972) (3–year securities statute of limitations applicable rather than 5–year statute of limitations for common-law fraud). Therefore, a violation of RCW 21.20.010(2) does not require a specific intent to defraud. The making of an untrue statement is sufficient.

[5]15 U.S.C. § 78ff(a) provides in relevant part: "Any person who willfully violates any provision of this chapter, or any rule or regulation thereunder the violation of which is made unlawful or the observance of which is required under the terms of this chapter, . . ." if convicted is subject to fine or imprisonment. RCW 21.20.400 provides in relevant part: "Any person who wilfully violates any provision of this chapter . . ." if convicted is subject to fine or imprisonment.

The language in *Hynds* provides additional support that an intent to deceive or deprive is not necessary to constitute an unlawful sale of securities under subsection 2. In discussing the instructions given by the trial court in *State v. Hynds, supra* at 664, the court stated: .

> These instructions do not use the precise language of the federal decisions; however, they tell the jury that the violation of the securities act must be willful, that the untrue statements must be intentionally made, and *that the defendant had to know in his own mind that his untrue statements would not occur, or* that the statements were made recklessly without knowledge of the facts and with intent to deceive.

(Italics ours.)

■ To constitute a criminal sale of securities, the action must also be willful. RCW 21.20.400. Again, because of the lack of state interpretation in determining the meaning of "willful" under this statute, we have examined several federal cases. Under the federal statute, one's actions are "willful" if one has the intention to commit the action with the knowledge that such action is wrongful, with the additional proviso that "the knowingly wrongful act involved a significant risk of effecting the violation that has occurred." *United States v. Peltz*, 433 F.2d 48, 55, 20 A.L.R. Fed. 216 (2d Cir. 1970). *See United States v. Dixon, supra; United States v. Schwartz*, 464 F.2d 499 (2d Cir. 1972); Annot., 20 A.L.R. Fed. 227 (1974); Herlands, *Criminal Aspects of the Securities Exchange Act of 1934*, 21 Va. L. Rev. 139, 148–49 (1934). A knowledge that the wrongful act actually violates the securities act is unnecessary. *United States v. Schwartz, supra; United States v. Peltz, supra.*

Since the defendant challenges instruction No. 5 because it fails to require an intent to defraud or deprive, it is necessary to determine if that instruction set out the intentions necessary for a criminal sale of securities. The instruction first stated that the jury must find that Mr. Schultz willfully and unlawfully committed one of the three acts under the unlawful sale of securities statute. The

instruction also stated that in order to find the defendant guilty of unlawful sale of securities, it must also find that the defendant willfully and unlawfully aided, abetted, counseled and encouraged Mr. Schultz in committing the unlawful sale of securities, as set out previously. An intention to defraud or deprive is not necessary when making or failing to make a statement as set forth in RCW 21.20.010. The court properly instructed the jury as to the meaning of the terms willfully[6] and unlawfully.[7] Therefore, the trial court's instruction No. 5 was sufficient.

Defendant additionally assigns error to the court's instruction No. 16, contending that when contrasted with defendant's proposed instructions Nos. 1, 2, 3 and 16, it was incomplete, misleading and failed to properly define aiding and abetting. At trial, defendant failed to object to the court's instruction No. 16. Notwithstanding, we find that assignment is not well taken inasmuch as counsel was afforded sufficient opportunity to argue his theory of the case under the instruction as given by the court.

The defendant next contends that the court erred in failing to give his proposed instructions Nos. 7, 8 and 9. The court's instructions presented these issues with sufficient clarity to allow defendant to argue his theory. The court is not required to instruct in the words of a particular litigant so long as the instructions given allow the litigant to argue his theory of the case. *State v. Huff,* 76 Wn.2d 577, 458 P.2d 180 (1969).

The same may be said for defendant's contention that the court erred in failing to give his proposed instruction on the burden of proof. The court's instructions Nos. 7 and 17 dealt with this issue; at trial the defendant failed to take exception to the court's instructions; therefore, they become the law of the case. *O'Brien v. Artz,* 74 Wn.2d 558, 445 P.2d 632 (1968).

---

[6]Instruction No. 8: "intentionally and purposely."

[7]Instruction No. 8: "without and beyond the authority of the law."

Lastly, the defendant contends that the court erred in failing to give his proposed instruction on circumstantial evidence. The defendant's proposed instruction was overruled and rejected in *State v. Gosby,* 85 Wn.2d 758, 539 P.2d 680 (1975); the court properly refused to give that instruction.

Judgment is affirmed.

GREEN and MCINTURFF, JJ., concur.

Petition for rehearing denied July 13, 1977.

Review denied by Supreme Court January 20, 1978.