[No. 5637–2–II. Division Two. October 17, 1983.]

MAUREEN R. TIDERMAN, *Respondent,* v. FLEETWOOD HOMES OF WASHINGTON, ET AL, *Appellants.*

*Malcolm L. Edwards,* for appellants.

*S. Brooke Taylor,* for respondent.

REED, J.—Maureen Tiderman developed severe, chronic asthma after being exposed to formaldehyde fumes given off by the plywood paneling in a new mobile home she had purchased. A jury awarded Tiderman $566,500. The manufacturer and dealer contend the jury was improperly instructed. We agree and remand for a new trial.

In May 1977, Maureen Mogck (now Tiderman) and a girl friend purchased a Fleetwood mobile home from Olympic

Auto and Trailer Sales (Olympic) in Port Angeles, Washington. Ms. Tiderman moved into the new home at the end of May. Shortly thereafter, she experienced a burning sensation in her eyes and throat. In July she collapsed, unable to breathe, while helping paint a house in Seattle. Her condition was diagnosed as asthma. She has had severe chronic asthma ever since and a related condition known as supra cord obstruction which on occasion renders her unable to breathe.

Ms. Tiderman sued Fleetwood Homes and Olympic (sellers). The case was tried to a jury on several product liability theories—implied warranty of merchantability and strict liability being the theories relevant to the issues on appeal. Several medical experts testified that formaldehyde fumes present in the mobile home caused Tiderman's illness. Other medical experts testified that Tiderman's asthma was genetic or that the concentration of formaldehyde was insufficient to cause any serious health problems.

We consider first the instructions concerning the implied warranty of merchantability. The jury was instructed as follows:

15. As to the claim of Breach of Implied Warranties, the plaintiff has the burden of proving each of the following propositions:
First, that the defendants Fleetwood Homes of Washington, Inc., and Olympic Auto & Trailer Sales, breached implied warranties that the mobile home was safe and fit for its intended use as a residence;

. . .

16. The builder or distributor of a mobile home impliedly warrants to the buyer that the mobile home is merchantable. This warranty of merchantability means that the mobile home is fit for *the purchaser to live in.*

(Italics ours.) Sellers took exception to the italicized language. They urged the trial court to substitute "fit for intended use as a residence." Sellers argue that the italicized language misled the jury in that it allowed the jury to focus on the fitness of the home for Tiderman rather than its fitness as a home for the average consumer.

 As a general rule, instructions are sufficient if (1) they permit the parties to argue their theory of the case, (2) they are not misleading, and (3) when read as a whole they correctly state the applicable law. *Braxton v. Rotec Indus., Inc.*, 30 Wn. App. 221, 633 P.2d 897 (1981). Sellers' theory of defense, *inter alia*, was that they had the duty to supply a mobile home which was fit for use by the ordinary consumer, not the duty to supply a residence safe for Tiderman in light of her peculiar sensitivity. Sellers contend that their position is amply supported by *Esborg v. Bailey Drug Co.*, 61 Wn.2d 347, 358, 378 P.2d 298 (1963), wherein the court stated:

> [I]t would appear reasonable to require of a plaintiff, seeking to establish a breach of such warranties, when confronted with the defense of allergy or hypersensitivity, that such plaintiff produce substantial evidence which, with the reasonable inferences therefrom, will support findings that: . . . (b) *such ingredient is harmful to a reasonably foreseeable and appreciable class or number of potential users of the product*; . . .

(Italics ours.)

We find merit in the sellers' position. Instruction 16 permitted the jury to hold sellers liable simply by finding that the mobile home was unfit for Tiderman (the purchaser) to live in. Tiderman argues that the sellers were not prejudiced because there was ample evidence from which the jury could have found that formaldehyde is harmful to a reasonably foreseeable and appreciable number of potential consumers. Unfortunately for Tiderman, there was also ample evidence to the contrary. Accordingly, the giving of instruction 16 was error.

We now turn to the instruction concerning the theory of strict liability. Although our resolution of the first issue disposes of this appeal, we will address sellers' contention that WPI 110.10, the basis for instruction 18, is misleading. We do so because any defect in that instruction is likely to affect subsequent proceedings as well.

Instruction 18 reads as follows:

As to the claim that each of the defendants sold a product that was not reasonably safe for its intended use, the plaintiff has the burden of proving each of the following propositions:

First, that the defendants supplied a product which was not reasonably safe at the time the product left the defendants' control *or defendants failed to give an adequate warning necessary to make the use of the product reasonably safe*; . . .

(Italics ours.) And, instruction 19 informed the jury that:

A seller and/or manufacturer has a duty to warn of any condition which renders a product not reasonably safe for a foreseeable use. There is, however, no duty to warn of obvious or known dangers.

■ Sellers first argue that an instruction such as 19 concerning the duty to warn was appropriate only if it was conceded that the mobile home would be unreasonably dangerous unless accompanied by a warning. We disagree. Whether a warning is necessary and/or adequate is a question for the jury. *Little v. PPG Indus., Inc.*, 92 Wn.2d 118, 594 P.2d 911 (1979); *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 573 P.2d 785, 93 A.L.R.3d 86 (1978). Further, a party is entitled to have his or her theory of the case presented to the jury if there is substantial evidence to support it. *Egede–Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 606 P.2d 1214 (1980). Here there was evidence from which a reasonable jury could have concluded that the mobile home was unreasonably dangerous unless accompanied by a warning. Consequently, Tiderman was entitled to an instruction predicating liability on the sellers' failure to warn.[1]

---

[1]Instruction 19 contained only the first paragraph of WPI 110.02. We are not informed as to why the second paragraph was omitted. That paragraph reads as follows:

Where a warning is required, it must be adequate so that if followed, the product would be reasonably safe for use. The warning must be appropriate in view of the seriousness of any danger involved to reasonably advise of the consequences of improper use. Such a warning must be in a form which reasonably could be expected to catch the attention of, and to be understood by, the ordinary user.

Next, sellers direct our attention to the italicized language of instruction 18, which language they asked the trial court to delete. Sellers argue that the italicized language misled the jury to assume a warning was necessary, without first finding that the mobile home was unreasonably dangerous without one.

■ Sellers have identified a legitimate vice in the pattern instruction. An instruction is misleading if it can be read in either of two ways, one a correct statement and the other an incorrect statement of the law. 88 C.J.S. *Trial* § 338 (1955). Here, the jury could have concluded that the language "necessary to make the use of the product reasonably safe" either qualifies the duty to warn, or that it merely explains why the duty to warn is absolute. In other words, the jury could have read the italicized language thusly:

(1) The sellers are liable for failure to warn but only if a warning was "necessary to make use of the product reasonably safe"; or

(2) The sellers are liable if they failed to give an adequate warning, such warning being "necessary to make use of the product reasonably safe."

The first construction accurately reflects the law, the second does not because it presupposes a duty to warn. Where, as here, there was no contention or proof that any warning was given, the instruction as given comes dangerously close to directing a verdict.

We have considered the other instructions given and, in the circumstances, do not believe the giving of instruction 18 was reversible error. However, we suggest that, on retrial, if an instruction on duty to warn is deemed appropriate, one be formulated on the lines of that approved in *Little v. PPG Indus., Inc., supra.*

Reversed and remanded for a new trial.

PETRIE, J., concurs.

PETRICH, C.J. (dissenting)—The majority's opinion reversing the judgment and remanding for a new trial

because of claimed instruction error ignores basic tenets of appellate review in such cases. Instructions must be taken as a whole and questioned portions of an instruction may not be considered in isolation but must be considered in light of all the instructions given. *Shasky v. Burden,* 78 Wn.2d 193, 470 P.2d 544 (1970); *Ranniger v. Bryce,* 51 Wn.2d 383, 318 P.2d 618 (1957); *Webley v. Adams Tractor Co.,* 1 Wn. App. 948, 465 P.2d 429 (1970). Further, an error, if any, in an instruction ordinarily is not prejudicial if the complaining party's theory can be argued under other instructions. *Prybysz v. Spokane,* 24 Wn. App. 452, 601 P.2d 1297 (1979).

The majority holds instruction 16 is flawed to such an extent as to require a reversal because it permitted the jury to hold the sellers liable under the theory of a breach of the implied warranty of merchantability by finding that the mobile home was unfit for the plaintiff as opposed to a reasonably foreseeable and appreciable class of potential users of the home. This result is based on the use of the word "purchaser" in the instruction. In my view the majority places too much emphasis on this perhaps unfortunate choice of terms. The preceding instruction, instruction 15, which set forth the elements the plaintiff was required to prove to recover under her theory of a breach of the implied warranty, correctly set forth the law. The plaintiff under this instruction was required to prove these defendants breached the implied warranty that the home was safe and fit for its intended purpose.

Each of several instructions which directed the jury to consider the facts as they related to Tiderman used the words "the plaintiff." Throughout all the given instructions, the jury had to consider whether *the plaintiff,* Tiderman, had established the burden of proof on her claims. Yet the defendants and the majority have singled out one part of a sentence in one instruction that says "the purchaser" and concluded that the jury would focus in on Tiderman. The undisputed fact is that Tiderman was not the sole purchaser of the home. Evidence, both oral and documentary,

clearly established that she and her roommate, Sonja Strandholm, were copurchasers of the unit. Instruction 16 with the language "fit for the purchaser to live in" allowed defendants to argue their theory of defense that they only had to supply a home fit for an average consumer to live in. They could have reminded the jury that the copurchaser, Sonja Strandholm, did not suffer any ill effects from living in the home, thus bolstering their theory that Tiderman suffered a unique and isolated reaction.

Concerning instruction 18, the majority notes that Tiderman was entitled to an instruction on the sellers' failure to warn, because there was evidence from which the jury could have concluded the mobile home was unreasonably dangerous without a warning. However, the majority agreed that the language in instruction 18:

> or defendants failed to give an *adequate* warning necessary to make the use of the product reasonably safe; . . .

(italics mine) was misleading since the jury could have read the instruction in such a way as to conclude a warning was necessary even absent an unreasonably dangerous product in order to make the use of the mobile home safe.

Here again the majority has failed to consider instruction 18 in light of the surrounding instructions. Instruction 18 was bracketed by two instructions which correctly set forth the law respecting the duty to supply a reasonably safe product and the duty to warn.

Instruction 17 states:

> A seller or manufacturer has a duty to supply products which are reasonably safe for use at the time they leave the seller's or manufacturer's control. A product is considered "not reasonably safe" if it is unsafe in a way or to an extent beyond that which an ordinary user would reasonably contemplate when using it in a foreseeable manner. In determining what an ordinary user would reasonably expect, you should consider the relative cost of the product, the seriousness of the potential harm from the claimed defect, the cost and feasibility of eliminating or minimizing the risk, and such other factors as

the nature of the product and the claimed defect indicate are appropriate.

Instruction 19 states:

A seller and/or manufacturer has a duty to warn of any condition which renders a product not reasonably safe for a foreseeable use. There is, however, no duty to warn of obvious or known dangers.

Considering instruction 18 in conjunction with these other instructions, the jury was not misled into thinking a warning had to be given even if the mobile home was safe without one.

I would affirm.

Review granted by Supreme Court March 9, 1984.